**UNITED STATE DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**CARL MOLANO,**

                        **Plaintiff,**

          **vs.**                                             **AMENDED**
                                                              **COMPLAINT**
                                                              **10-CV-6481 L**

**NORMAN BEZIO and JOSE PICO,**

                       **Defendants.**

_____

## PRELIMINARY STATEMENT

1.      This is a civil rights action brought by the plaintiff Carl Molano, seeking damages as a result of the wrongful determination that he violated a rule of the New York State Department of Correctional Services (hereinafter DOCS) and his subsequent confinement to the Special Housing Unit for 377 days.

## JURISDICTION AND VENUE

2.      The court has jurisdiction over this action pursuant to 28 U.S.C.  Sections 1331 and 1343.

3.      This action is brought pursuant to 42 U.S.C. Sections 1983 and 1988, to remedy deprivations under color of state law under the Fifth and Fourteenth Amendments of the U.S. Constitution.

4.      Venue properly lies in the Western District of New York pursuant to 28 U.S.C. Sec. 1391(b) (2).

## PREVIOUS LAWSUITS

5.      Plaintiff has filed one other lawsuit concerning the same facts and

circumstances giving rise to the instant action, Matter of Carl Molano v. Norman Bezio, 60

A.D.3d 1233, 874 N.Y.S.2d 394 (3rd Dept. 2009).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Plaintiff has exhausted his administrative remedies with respect to his claims.

## PARTIES

7.      Plaintiff Carl Molano is currently held at the Lakeview Correctional Facility,

Brocton, NY.

8.      Defendant Norman Bezio, at times relevant to this complaint, was the Director of

Special Housing/Inmate Disciplinary Programs in the central office of the DOCS in Albany, NY.

Mr. Bezio is responsible for the operation of the inmate discipline program and issued the

decision denying Plaintiff's appeal of his Tier III hearings.

9.      Defendant Jose Pico at all times relevant to this complaint was the Hearing

Officer who conducted Plaintiff's Tier III hearings at the Five Points Correctional Facility

(hereinafter Five Points).

## FACTS

10.      On January 16, 2008, Mr. Molano, along with approximately 69 other inmates,

was in a recreation yard at Five Points at approximately 8:10 PM.

11.      Mr. Molano was assigned to a job in the yard as a porter. He was walking around

the yard at 8:10 PM on January 16, 2008 with another inmate, Mr. Blake.

12.	At approximately 8:10 PM, another inmate in the yard, Travis Lang, was injured when someone cut him across the face as he was talking on a telephone in the yard.

13.	Mr. Lang immediately left the yard and when questioned by a corrections officer regarding his injury, he said he did not know who had cut him.

14.	All of the remaining inmates in the yard were searched and no weapons were found.  All the inmates were also examined for injuries or traces of blood and none were found. All the cells of the inmates who were in the yard were searched and all contained the razors issued to each inmate by the Five Points staff.

15.	Later that evening, Mr. Molano was taken from his cell and placed in a holding pen where he was questioned by facility staff and told that he had been identified by Mr. Lang as the person who cut him.

16.	Mr. Molano was taken to and confined in the Five Points Special Housing Unit.

17.	On January 18, 2008 Plaintiff was served with an Inmate Misbehavior Report written by Corrections Sergeant R. Bevier, dated January 16, 2008, charging him with violating Inmate rule 100.10, assault and 104.11, violent conduct.

18.	The Misbehavior Report alleges that Mr. Lang was cut by an unknown object in the yard and later identified Mr. Molano from a photo array conducted on the evening of January 16, 2008, as the person who cut him.

19.	The Misbehavior Report was signed by Sgt. Bevier who was not a witness to the incident in the yard.

20.	Sgt. Bevier was not present when Mr. Lang allegedly identified Mr. Molano from a photo array.

21.     Sgt. Bevier had no firsthand knowledge of any relevant fact contained in the

Misbehavior Report regarding the identification of Mr. Molano as the person who cut Mr. Lang.

22.     Mr. Lang never told Sgt. Bevier that Mr. Molano assaulted him.

23.     Sgt. Bevier made no attempt to personally verify that Mr. Molano was the one

who cut Mr. Lang and made no effort to evaluate Mr. Lang's credibility.

24.     Mr. Molano requested assistance to prepare for the hearing. He gave his assigned

assistant a list of documents which he needed to prepare his defense including video tapes of the

yard, the conduct of the photo array and interviews of himself and Mr. Lang. He also requested

copies of any reports regarding the incident written by Mr. Lang and any DOCS' staff, as well as,

a copy of the photo array.

25.     Many of the documents and videotapes which Mr. Molano requested were not

provided to him. His assigned assistant denied many of the requests without providing any safety

or security reason for withholding the evidence, stating the documentary evidence either did not

exit, was not relevant or that Mr. Molano could not have it.

26.     When Mr. Molano reiterated his requests for the documentary evidence at his

hearing, he was again denied and no reason was provided for the failure to produce many items,

except for two videotapes which the Hearing Officer said were not available.

27.     On January 23, 2008, a Tier III hearing regarding Plaintiff's Misbehavior Report

was commenced at Five Points presided over by Defendant Hearing Officer Jose Pico.

28.     Plaintiff pled not guilty to the charges against him.

29.     A portion of one video tape which Mr. Molano requested was produced and

showed Mr. Lang with several corrections officers in a hallway outside the yard following the

assault. A corrections officer is heard asking Mr. Lang who assaulted him and Mr. Lang

responded repeatedly that he did not know.

30.     Mr. Molano objected because a second portion of that video tape was not

produced which he alleged contained additional statements made by Mr., Lang which would aid

in Mr. Molano's defense.  No valid reason was provided for not producing the requested video

tape.

31.     Sgt. Bevier, the author of the Misbehavior Report, testified at the hearing that he

interviewed Mr. Molano in the 10 block holding pen about his involvement in the incident.

32.     Mr. Molano requested a video tape of the interview he had while he was being

held in the holding pen, in part, to show that the interview was not conducted by Sergeant Bevier.

33.     The videotape was not produced and Defendant Pico provided no safety or

security reason for not providing the tape.

34.     In response to questions posed by Defendant Pico, Sgt. Bevier first testified that

Mr. Lang picked Mr. Molano's picture out of a photo array and he described how he conducted

the photo array.

35.     In response to questions posed by Defendant Pico, Sgt. Bevier stated that while he

was conducting the photo array, Mr. Lang stated to him a physical description of the person who

assaulted him. While testifying as to the physical description allegedly stated by Mr. Lang, Sgt.

Bevier was looking at Plaintiff Molano.

36.     In response to questions posed by Plaintiff Molano, Sgt. Bevier stated he

questioned Mr. Molano in the 10 block holding pen when Mr. Molano was taken there for

investigation.

37.     After Plaintiff Molano posed additional questions to Sgt. Bevier regarding the timing and conduct of the investigation and photo array, Sgt. Bevier then testified he was not present during the photo array.

38.     Sgt. Bevier then testified that he did not previously say that Mr. Lang picked Mr. Molano out of the photo array.

39.     Defendant Pico stated he had not heard Sgt. Bevier testify that he conducted the photo array.

40.     In response to questions posed by the Hearing Officer, Sgt. Levac testified that Mr. Lang picked Mr. Molano's picture out of a photo array and described how the photo array was conducted.

41.     Sgt. Levac did not say how he knew that the picture allegedly identified by Mr. Lang was in fact Mr. Molano.

42.     Sgt. Levac made no attempt to investigate further and verify that Mr. Molano was the one who cut Mr. Lang and made no effort to evaluate Mr. Lang's credibility.

43.     Plaintiff called as a witness Mr. Blake who testified that he was with Mr. Molano in the yard the night of the incident and that Mr. Molano did not assault Mr. Lang.

44.     Plaintiff called as a witness Mr. Lang, who testified outside Mr. Molano's presence. In response to questions posed by the Defendant Hearing Officer Pico, Mr. Lang stated that he did not write the statement shown to him by Defendant Pico which stated that Mr. Molano had assaulted him.

45.     Mr. Molano was never given a copy of the written statement referred to by Defendant Pico despite his request for all written statements made by Mr. Lang.

46.     The statement referred to by Defendant Pico is not in the certified record of the Tier III hearing.

47.     Mr. Lang told Defendant Pico that he did not want to answer any questions which had been written by Mr. Molano.

48.     Defendant Pico did not ask Mr. Lang any questions of his own such as whether Mr. Molano assaulted him or if he picked Mr. Molano's picture out of a photo array.

49.     Defendant Pico made no attempt to investigate further or verify that Mr. Molano was the one who cut Mr. Lang and made no effort to evaluate Mr. Lang's credibility.

50.     Corrections Officer Coburn testified at the hearing that Sgt. Bevier was not in the infirmary when Mr. Lang was seen by the doctor and other DOCS' staff.

51.     At the conclusion of the hearing, Defendant Pico stated that Mr. Lang's testimony at the hearing neither implicated nor exonerated Mr. Molano.

52.     At the conclusion of the hearing, Mr. Molano repeatedly requested Defendant Pico to recall Mr. Lang and ask him directly if Mr. Molano had assaulted him.  Mr. Molano stated that Mr. Lang would testify that Mr. Molano was not the person who cut him.

53.     Defendant Pico declined to recall Mr. Lang.

54.     Defendant Pico found Mr. Molano guilty of both charges against him and ordered that he be held 36 months in SHU with the loss of other privileges and the loss of 36 months of good time.

55.     Mr. Molano appealed that determination to Defendant Bezio on the grounds that he was denied relevant documentary evidence, including video tapes, which would have assisted his defense and that there was insufficient evidence to find him guilty.

56.      Along with his appeal, Mr. Molano submitted a copy of an affidavit which was

sent to him by Mr. Lang in which Mr. Lang states that Mr. Molano did not assault him.

57.      By a decision dated March 20, 2008, defendant Bezio affirmed the determination

by Defendant Pico and modified the penalty to 24 months SHU and loss of privileges.

### SHU Conditions

58.      Plaintiff was held in the Special Housing Unit at Southport Correctional Facility

(hereinafter Southport) for most of the 377 days he was held in restricted confinement as a result

of the determination of Defendants Pico and Bezio.

59.      At Southport Mr. Molano was held in isolation in a 6 foot by 9 foot cell for 23

hours a day during which he could not see any other inmates.

60.      Plaintiff was held for one hour a day in an outdoor wire mesh pen for exercise.

61.      Every time Plaintiff left his cell he was shackled, with leg irons and handcuffs

attached to a waste chain.

62.      Plaintiff was allowed only two, 10 minute showers per week and was not allowed

to have his personal bathroom and hygiene supplies.

63.      While held in SHU, Plaintiff had limited or no access to his personal clothing or

property and was denied regular recreational opportunities, denied package, commissary and

telephone privileges, had restricted access to reading material and was not allowed to watch

television.

64.      Plaintiff had received regular weekly visits with his son and daughter while he

was at Five Points, in a setting which allowed him to hold the children who were three years old

and actively interact with them.

65.     When he was held at Southport, he was only able to visit with his children once every three months. He was handcuffed during the visit and was separated from his children by a wire mesh screen with only a small slot measuring 2 inches by two inches through which they could have personal contact.

## Article 78 Proceeding

66.     Plaintiff timely filed an Article 78 Proceeding in New York State Supreme Court, Chemung County challenging the disposition at his Tier III hearing. The Article 78 Proceeding was transferred to the Appellate Division, Third Department because it raised, among several causes of action, the lack of substantial evidence to support the determination.

67.     Plaintiff named as Respondents in that action Defendants Pico and Bezio.

68.     By a letter dated January 8, 2009, Respondents, through their attorney, the Attorney General of the State of New York, notified the Appellate Division, Third Department that the Tier III hearing being challenged was administratively reversed and that Plaintiff had been released from Southport.

69.     Plaintiff served three hundred and seventy-seven days in SHU confinement as a result of the charges which were reversed.

## CLAIMS FOR RELIEF

70.     Defendants' actions and omissions stated above caused Plaintiff physical pain, emotional distress and the loss of liberty as a result of the 377 days of illegal confinement in the Special Housing Unit.

71.     Defendants' actions and omissions stated above violated Plaintiff's rights to due process of law guaranteed by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. Section 1983.

**JURY TRIAL DEMAND**

72.     Plaintiff demands a trial by jury.

**RELIEF REQUESTED**

73.     Adjudge and declare that Defendants' actions and omissions as stated above violated Plaintiff's rights guaranteed by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. Sec. 1983.

74.      Award Plaintiff compensatory and punitive damages, in an amount to be determined, against the Defendants for the violation of Plaintiff's constitutional right to due process of law caused by the Defendants' actions and omissions.

75.     Award Plaintiff the costs of this litigation and reasonable attorney's fees and expenses pursuant to 42 U.S.C. Sec. 1983 and Sec. 1988.

76.     Award such other and further relief as the Court deems just and proper.


Dated: February 18, 2011


_____s/ Thomas Terrizzi_____
THOMAS TERRIZZI
Attorney for Plaintiff Carl Molano


Law Office of Thomas Terrizzi
14 Lafayette Square, Suite 1800
Buffalo, NY 14203
716-845-5070
tterrizzi05@yahoo.com


10