UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARL E. MOLANO,

                                        Plaintiff,

                                                        DECISION AND ORDER

                                                        10-CV-6481L

                v.

NORMAN BEZIO,
JOSE PICO,

                                        Defendants.
_____

        Plaintiff Carl Molano ("Molano") brings this action against Norman Bezio ("Bezio"),
Director of Special Housing and the Inmate Discipline Program and Jose Pico ("Pico"), a hearing
officer for the New York State Department of Correctional Services ("DOCS").  Molano alleges that
during his incarceration at Five Points Correctional Facility ("Five Points"), Pico denied him due
process of law with regard to a disciplinary hearing, and that defendant Bezio improperly declined
to reverse the outcome of the hearing, in violation of his Fourteenth Amendment rights and 42
U.S.C. §1983.  U.S. CONST. Amend. XIV.

        The defendants have moved (Dkt. #12), and plaintiff has cross moved (Dkt. #18) for
summary judgment to Fed. R. Civ. Proc. 56.  For the reasons set forth below, defendants' motion for
summary judgment is denied, and plaintiff's cross motion is granted.


                                **DISCUSSION**

**I.      Motion for Summary Judgment**

        Pursuant to Fed. R. Civ. Proc. 56(c), summary judgment is appropriate where the moving
papers and affidavits submitted by the parties "show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

To survive a motion for summary judgment, the non-moving party must produce evidence in admissible form "sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). All evidence will be viewed in the light most favorable to the non-moving party, and the Court will draw all reasonable inferences in its favor. *See e.g.*, *American Casualty Company of Reading, P.A. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994).

## II.    Factual Background

On January 16, 2008, plaintiff was in the recreation yard at Five Points when another inmate, Travis Lang ("Lang"), was attacked from behind and cut across the face with a sharp object. Although several dozen inmates were in the yard at the time, no witnesses to the incident were identified and the attacker was not identified at that time.

On January 18, 2008, however, plaintiff was served with a misbehavior report completed by Sergeant R. Bevier, which charged him with attacking Lang, and stated that Lang had identified plaintiff as his assailant from a photo array.

On January 23, a Tier III disciplinary hearing was conducted before Hearing Officer Pico. Plaintiff pled "not guilty," and testified that although he had been in the recreation yard at the time of the attack on Lang, he had not interacted with Lang, and had no idea who he was. Another inmate, Barion Blake ("Blake"), corroborated plaintiff's version of events, and testified that he had been in the yard speaking with plaintiff at the time of the attack, and that plaintiff had not assaulted anyone. Corrections Officer J. Wright testified that he had been working in the yard and saw Lang immediately after the attack, at which time Lang stated that he did not know who had attacked him. Sergeant Bevier described how he had prepared a photo array for Lang made up of sixty-nine (69) inmate photographs, representing all of the inmates believed to have been present in the yard at the

time of the attack.  Sergeant Levac (variously identified in the record as Sergeant "Lebeck" or "Labeck") testified that he had observed Lang's identification of plaintiff from that photo array.

At the conclusion of the hearing, Pico found plaintiff guilty and sentenced him to thirty-six months' incarceration in the special housing unit ("SHU").  Plaintiff appealed to Bezio, on the grounds that there was insufficient evidence for Pico to have found him guilty.  In support of his appeal, plaintiff submitted a sworn affidavit from Lang, in which Lang testified that he was positive that plaintiff was *not* the person who had attacked him.  Bezio denied the appeal, but modified plaintiffs' sentence to twenty-four months in the SHU, on the basis that the original 36-month sentence was disproportionate to plaintiff's misconduct.  Plaintiff filed a request for reconsideration with Bezio, which was denied.

Plaintiff thereafter filed an Article 78 proceeding in New York State Supreme Court, challenging the outcome of the Tier III hearing.  Before that proceeding could be completed, however,  plaintiff was notified that the Commissioner had administratively reversed the finding of guilty.  By the time the Tier III hearing's guilty finding was reversed, plaintiff had already served approximately twelve months in SHU, with a corresponding loss of privileges.


### III.    Plaintiff's Fourteenth Amendment Due Process Claim

Defendants argue that Hearing Officer Pico's failure to order disclosure of certain videotapes, failure to provide plaintiff with effective assistance at the hearing, and the lack of evidence supporting his finding of guilty, do not constitute denials of plaintiff's right to due process.

The Fourteenth Amendment prohibits the government from depriving citizens of life, liberty or property without due process of law.  *See e.g.*, *Wilkinson v. Austin*, 545 U.S. 209 (2005).  A protected liberty interest may arise from the Due Process Clause itself, or from an expectation or interest created by state law or administrative regulations.  *Id.*, 545 U.S. 209 at 221-222.

Initially, I note that the defendants appear to concede that plaintiff's approximately one year-long tenure in SHU and corresponding loss of privileges is a sufficient deprivation of liberty to

trigger Fourteenth Amendment protection. *See e.g.*, *Palmer v. Richards*, 364 F.3d 60, 65-66 (2d Cir. 2004) (305 days or more in SHU is a sufficient "departure from the ordinary incidents of prison life" to require due process, and does not require more detailed analysis of the conditions of confinement); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (same). The Court, therefore, proceeds to the question of whether plaintiff received due process.

In the context of inmate disciplinary hearings, the Fourteenth Amendment requires that: (1) the inmate must receive at least twenty-four hours' written notice of the disciplinary charges against him; (2) the inmate must have a full and fair opportunity to call witnesses and present evidence in his defense, so long as doing so would not unduly risk institutional safety and correctional goals; (3) the inmate must be judged by a fair and impartial hearing officer; and (4) the disciplinary conviction, and (4) the inmate must be provided with a written statement of factual findings supporting the disposition and the disciplinary action taken. *Hill v. Superintendent*, 472 U.S. 445, 455-456 (1985). Furthermore, in order to pass constitutional muster, a guilty finding must be supported by "some evidence." *See Wolff v. McDonnell*, 418 U.S. 539, 563-564 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

A.      **Denial of Access to Videotape Evidence**

In his investigation report, Sergeant Bevier testified that he had interviewed plaintiff about the incident in the yard, prior to plaintiff's move to SHU. In preparing for the disciplinary hearing, plaintiff requested a copy of the surveillance videotape from the holding pen where the interview allegedly took place. Plaintiff claims that he was denied access to the video by Hearing Officer Pico, and thus was unable to use it to impeach Bevier's testimony concerning the interview, which plaintiff asserts never took place. Specifically, when plaintiff requested that the video be produced and shown at the hearing to impeach Bevier's credibility, Pico refused, simply stating that the hearing had to "move forward."

There is no proof that a surveillance videotape of the holding pen existed at the time plaintiff requested it. *See Capalbo v. United States*, 2012 U.S. Dist. LEXIS 24005 at *16 (S.D.N.Y. 2012) (a party is not required to produce  evidence that does not exist).  Furthermore, plaintiff offers no proof that the requested videotape, if it did exist, would have contained relevant, non-cumulative evidence, or that its introduction had any potential to change the outcome of the proceeding. *See e.g.*, *Ford v. Fischer*, 2011 U.S. Dist. LEXIS 23479 at *37 (N.D.N.Y. 2011) (hearing officer's refusal to admit certain evidence at inmate's disciplinary hearing, even if improper, is harmless where there is no showing that the evidence would have changed the outcome of the proceeding). As such, Hearing Officer Pico's refusal to order the production of such evidence, if any, does not amount to a denial of due process.

### B.      Ineffective Assistance

Plaintiff's "ineffective assistance" claim is atypical in that plaintiff has not alleged the claim against his assistant at the disciplinary hearing, but against Hearing Officer Pico.  It is well-settled, however, that a hearing officer cannot be held liable for ineffective assistance unless he was personally involved in the constitutional violation.  This necessarily requires that the issue have been raised and addressed by the hearing officer at the hearing. *See e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 873-874 (2d Cir. 1995).  Furthermore, failure to raise the issue on administrative appeal is deemed a waiver, and it cannot thereafter be raised in a subsequent judicial proceeding. *See Jackson v. Johnson*, 30 F. Supp 2d 613, 619 (S.D.N.Y. 1998).

Here, plaintiff failed to raise the issue of ineffective assistance at the disciplinary hearing or as part of his administrative appeal.  To the contrary, when asked by Hearing Officer Pico at the disciplinary hearing whether he was content with the assistance he had received, plaintiff replied that he was satisfied with his assistant.  (Dkt. #14, Exh. C, Transcript at 2).  Accordingly, Officer Pico

cannot be found to have been personally involved in the alleged constitutional violation, nor was the issue preserved for appeal.  Plaintiff's ineffective assistance claim is thus dismissed.

### C.    Lack of Evidence

Finally, plaintiff contends that Hearing Officer Pico's finding of "guilty" was not supported by some evidence, and that Pico knew or should have known that the scant amount of evidence supporting his finding was insufficient to satisfy plaintiff's due process rights.  I agree with plaintiff on this point.

In *Hill*, the Supreme Court held that "the requirements of due process are satisfied if some evidence supports the decision . . . the relevant question is whether there is any evidence in the record that could support the conclusion reached."  *Hill*, 472 U.S. 445 at 455-456.  The Second Circuit has found that, implicit in the "some evidence" requirement, is the mandate that the evidence be "reliable."  For example, the evidence relied upon cannot be "blatantly implausible," and in the context of confidential informant testimony, cannot lack "some examination of indicia relevant to [the] informant's credibility," or some other evidence corroborating the informant's report.  *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (collecting and discussing example cases).

Here, defendants concede that the only evidence against plaintiff consisted of plaintiff's admitted presence in the yard at the time of the attack, and records and testimony concerning the alleged photo array identification.  (Dkt. #15 at 7).  Sergeant Bevier initially testified about the alleged identification of plaintiff during the photo array, in connection with which he had signed a New York State Police Photo Display Record stating that he was the only officer present.  On cross-examination by plaintiff, however, Sergeant Bevier stated that he had *not* been present during the photo array.  Sergeant Levac, who was not listed on the Photo Display Record as having been present, testified that only he – and not Sergeant Bevier – had been there, and that he had seen Lang identify the plaintiff from the photos presented.

Lang submitted a "refusal to testify" form to Hearing Officer Pico which stated that he refused to testify because, "this inmate was the one who assaulted me." (Dkt. #14, Exh. D).  When Pico attempted to verify the contents of the form during the hearing, Lang admitted that he had signed the refusal form and was unwilling to testify, but denied having written on the form that plaintiff was the person who had assaulted him.  No one who testified at the hearing had personally observed the attack, and no testimony or evidence was presented at the hearing which suggested that any efforts, beyond the photo array, were made to verify the identification of plaintiff as Lang's attacker, to assess Lang's credibility in making the identification, or to explore his testimony that he had not identified plaintiff as his attacker on the refusal form.

Contrary to applicable DOCS regulations, the misbehavior report completed by Sergeant Bevier was made up entirely of hearsay and double hearsay statements from other officers, none of whom endorsed the report or submitted their own firsthand reports.  *See generally* 7 N.Y.C.R.R. §251-3.1(b) ("[a] misbehavior report shall be made by the employee who has observed the incident or who has ascertained the facts of the incident.  Where more than one employee has personal knowledge of the facts, each employee shall make a separate report or, where appropriate, each employee shall endorse his/her name on a report made by one of the employees").  Furthermore, to the extent that Sergeants Bevier and Levac testified about the photo array, their testimony was inconsistent and conflicted with the Photo Array Record.

The evidence upon which plaintiff was found guilty at the Tier III hearing - records and testimony concerning Lang's identification of plaintiff in a photo array, an identification which Lang refused to confirm, and ultimately denied having made - is insufficient to satisfy even the lenient "some reliable evidence" standard required for due process.

This case is strikingly similar to a previous action against Hearing Officer Pico concerning a Tier III disciplinary hearing, in which the Second Circuit held that "a bare accusation by a victim who then refused to confirm his initial allegations," in the absence of any efforts by investigators and/or the hearing officer to verify the accusation or provide an "independent credibility assessment"

of the accuser, falls short of the "some evidence" standard. *Luna*, 356 F.3d 481 at 489. *Luna* clearly and unambiguously held that an accuser's statement, uncorroborated and without a credibility examination, is not "some evidence" sufficient to enable a guilty finding based upon it to pass constitutional muster. *Id.* As such, the Court concludes that Hearing Officer Pico's guilty finding, which as in *Luna* was premised solely on a victim's uncorroborated identification of his attacker with no inquiry into the victim's credibility, and no other corroborating evidence, was not supported by "some reliable evidence," and thus violated plaintiff's Fourteenth Amendment due process rights.

### D.     Failure to Reverse

Plaintiff asserts that Bezio's failure to overturn Pico's determination on appeal, and his alleged failure to consider the exculpatory evidence submitted by plaintiff in connection with that appeal, renders him directly involved, and therefore personally liable, for the alleged underlying constitutional violation by Hearing Officer Pico. In general, "while personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results." *Collins v. Ferguson*, 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011), *quoting Garcia v. Selsky*, 680 F.Supp.2d 479, 481 (W.D.N.Y. 2010). *See generally Black v. Coughlin*, 76 F.3d 72, 74-75 (2d. Cir. 1996).

Here, the complaint itself alleges only that Bezio affirmed and modified Pico's decision, denied reconsideration, and reversed it only after plaintiff had served more than a year in SHU. (Dkt. #1). In his cross motion for summary judgment, plaintiff also submits documents demonstrating that in his appeal to Bezio, he identified the due process violations that he believed had occurred during the disciplinary proceeding, and submitted additional exculpatory evidence, such that Bezio was fully aware of the violations and the facts that supported them.

Because defendants have not taken the opportunity to submit arguments or evidence in response to plaintiff's cross motion, and did not address Bezio's alleged personal involvement in their initial papers, I conclude that the facts concerning Bezio's personal involvement are undisputed.

Because the undisputed facts demonstrate that Bezio was fully aware of the deficiencies in the underlying hearing at the time he denied plaintiff's appeal and later denied reconsideration, I accordingly find that plaintiff has established Bezio's personal involvement in, and liability for, the underlying violation, as a matter of law.  *See e.g.*, *Collins*, 804 F. Supp. 2d 134 at 140.  *See also Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) ("personal involvement" may be found where a "supervisory official, after learning of the [constitutional] violation through a report or appeal, may have failed to remedy the wrong"); *Garcia v. Selsky*, 680 F. Supp. 2d 479, 481-482 (W.D.N.Y. 2010) ("plaintiff alleges that in his administrative appeal, he identified the due process violations that he claims occurred during the disciplinary proceedings, and that [the Director] was made fully aware of those allegations and the facts supporting them. If those allegations are correct, then plaintiff may be able to establish [the Director's] personal involvement").  *But see Brown v. Brun*, 2010 U.S. Dist. LEXIS 130497 at *6 (W.D.N.Y. 2010) (noting apparent split in Second Circuit concerning sufficiency of allegations of personal involvement related to affirmance of disciplinary hearings, and collecting cases, and noting that the distinction appears to hinge upon whether the official proactively participated in reviewing the administrative appeal or merely rubber-stamped the results).

## IV.   Qualified Immunity

I further find that defendants in this case are not entitled to qualified immunity.

The doctrine of qualified immunity shields government officials from liability for civil damages where their performance of their discretionary duties does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To be clearly established, the law must be defined with reasonable clarity, the Supreme Court or the Second Circuit must have recognized the right, and the right must be sufficiently clear "so that a reasonable defendant would have understood from the existing law that his conduct was unlawful."  *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 215

(W.D.N.Y. 2010), *citing Anderson v. Recore*, 317 F.3d 194, 197 (2d. Cir. 2003).  Furthermore, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized [and relevant] sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   Thus, even if a state official violates a plaintiff's constitutional right, he is still entitled to qualified immunity if he objectively and reasonably believed that he was acting lawfully.  *See Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) ("[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law") (internal quotations omitted).

Initially, as discussed in detail above, I find that the disciplinary hearing and the guilty finding that resulted violated plaintiff's constitutional right to due process, in that the Hearing Officer's findings were not supported by some reliable evidence of record.  Furthermore, I find that the instant case is so similar to the facts examined by the Second Circuit in *Luna*, which also involved Hearing Officer Pico and was decided some four years prior to the relevant events in this case, that *Luna*'s holding squarely applies, and renders the issue "clearly established" for purposes of qualified immunity.   As the *Luna* Court stated, "[w]e are quick to emphasize . . . that our constitutional holding - that a prisoner's due process rights are violated when he is punished solely on the basis of a victim's hearsay accusation without any indication in the record as to why the victim should be credited - *is 'clearly established' for the purpose of future qualified immunity cases involving similar fact patterns*." *See Luna*, 356 F.3d 481 at 491 (emphasis added).  Again, because Officer Pico was one of the defendants in *Luna*, there can be no question that he was fully aware of its holding.  As such, he could not have objectively and reasonably believed that his guilty finding on nearly identical evidence in the instant matter was constitutional.

Because the defendants' findings in this case, as in *Luna*, had as their basis "a victim's hearsay accusation," without any analysis of the victim's credibility, and because the insufficiency

- 10 -

of such evidence to support a conviction was "clearly established" for all similar future cases by *Luna*, the defendants' actions violated rights of which a reasonable person would have known, and they are not entitled to qualified immunity.

## **CONCLUSION**

For the foregoing reasons, I find that there are no material issues of fact, and that plaintiff is entitled to judgment as a matter of law with regard to his claim that his Fourteenth Amendment right to due process was violated by defendants when they convicted and/or failed to overturn his conviction on a disciplinary infraction which was unsupported by some reliable evidence of record. Accordingly, plaintiff's cross motion for summary judgment (Dkt. #18) is granted, and defendants' motion for summary judgment (Dkt. #12) is denied.

Counsel are directed to confer and contact the Court within thirty (30) days as to whether a consensual resolution of the damages amount has been reached.  If no agreement, the Court will schedule a trial on damages.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        April 13, 2012.